762 F.2d 1013
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
JACKIE THOMAS NORRIS, DEFENDANT-APPELLANT.
 NO. 84-5743
 United States Court of Appeals, Sixth Circuit.
 4/12/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 BEFORE: MERRITT and WELLFORD, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 A jury convicted Jackie Norris on one count of making a false or fictitious written statement in the purchase of explosive materials, 18 U.S.C. Sec. 842(a)(2), and on one count of receiving explosives after being convicted of a felony,[1] 18 U.S.C. Sec. 842(i)(1). The court sentenced Norris to five years on each count to be served consecutively. On appeal Norris raises three issues: (1) whether sufficient evidence supports his conviction on count two--receiving explosives, (2) whether prosecutorial misconduct during closing arguments violated Norris' right to a fair trial, and (3) whether the court erred in admitting evidence that Norris had purchased explosives on occasions other than the date charged.
 
 I. FACTS
 
 2
 On May 13, 1982, Norris entered the office of the Kentucky-Tennessee Powder Company[2] and requested a case of dynamite from Mr. Poore, the company's office manager. As he had done on approximately twelve other occasions, Norris filled out the federally required Alcohol, Tobacco and Firearms form, No. 4710, by answering 'no' to whether he had ever been convicted of a felony, and by signing the form as 'Bill Norris.'[3] Since Poore had on file an authorization form under the name 'Bill Norris', he was willing to sell the dynamite.[4]
 
 
 3
 While he was filling out the paperwork for the purchase, Poore directed an employee to accompany Norris to the magazine to pick up the dynamite. Later the employee and Norris returned to the office and the employee furnished Poore with the code number of the case of dynamite that had been sold. Norris paid Poore in cash for the dynamite. No eyewitness testified about seeing Norris actually receive the explosives.
 
 
 4
 Bill Norris was a defense witness, who claimed that for six months his hand was hurt and on three trips to the explosives company during this time had had Jackie Norris accompany him to sign the papers. He claimed, however, that on May 13, 1982, he went alone to Poore's office to purchase the explosives and had signed the papers himself, but Mr. Maurer, a special agent of the Bureau of Alcohol, Tobacco, and Firearms, challenged Bill Norris' veracity. The agent claimed that he interviewed Bill Norris and asked him to sign an affidavit 'as you would normally sign documents.' Bill Norris signed the affidavit 'Charles W. Norris' and not 'Bill Norris.' The government did not present expert handwriting testimony concerning the identity of the actual signer of the questioned document, but the jury, after an opportunity to view the document, defendant's signature, and defendant's brother's signature, necessarily found that defendant signed, using the name, 'Bill Norris.'
 
 II. DISCUSSION
 A. Sufficiency of the Evidence
 
 5
 On review, this court will sustain a conviction if supported by substantial and competent evidence. United States v. Tilton, 714 F.2d 643, 645 (6th Cir. 1983). The court, however, must view the evidence in the light most favorable to the government drawing reasonable inferences from the evidence in the government's favor. Id. The jury has the exclusive province to make credibility determinations and resolve evidentiary conflicts. United States v. Bailey, 444 U.S. 394, 414-15 (1980); United States v. Chagra, 669 F.2d 241, 257 (5th Cir.), cert. denied, 459 U.S. 846 (1982). Once the jury has made its decision, we must find that the evidence 'justify a rational juror's conclusion that every element of the offense has been established beyond a reasonable doubt.' United States v. Tilton, 714 F.2d at 645-46.
 
 
 6
 The testimony of James Poore and Bill Norris is irreconcilable. Had the jury believed defendant's brother, defendant would have been acquitted. The jury, however, resolved the evidentiary conflict against defendant, and therefore convicted him on both counts. On review, we must accept the trier of fact's resolution of the evidentiary conflict, and therefore will affirm if Poore's testimony along with that of the government's other witnesses provides substantial and competent evidence.
 
 
 7
 Norris claims that the Poore testimony, even accepted as true, is insufficient to prove the conviction under count two--receiving explosives. While the government adduced no eyewitness testimony that Norris took physical possession of the explosives, Poore's testimony provides circumstantial evidence that defendant, and not his brother or some other person, received the dynamite for which Jackie Norris paid cash. Poore testified that Jackie Norris came into his office alone, was accompanied to the magazine by an employee, returned with the employee to Poore's office, who had the serial number of a case of dynamite, signed the papers, and left alone. This is strong circumstantial evidence that Norris received the explosives. 'Circumstantial evidence is entitled to the same weight as direct evidence in this calculus [of determining sufficiency].' Holland v. United States, 348 U.S. 121, 140 (1948). It is, in any event, sufficient to overcome defendant's acquittal motion.
 
 
 8
 We reject defendant's first claim of error.
 
 B. Prosecutorial Misconduct
 
 9
 During closing arguments, defense counsel made the following comments:
 
 
 10
 If the testimony of James Poore leaves you with some doubt, if the evidence presented to you--if there was anything missing from that evidence, if anything at all, if you believe that something else could have and should have been produced, such as handwriting examplars or a handwriting expert to say whose handwriting that was, and again you can look at the documents in the Jury Room, look at the writing on the forms, but if you think you should have had some evidence as to whose handwriting it was, that goes with where the burden of proof rests. It's not the defendant's burden of proof, it's the government's burden of proof beyond a reasonable doubt.
 
 
 11
 The implication that the government must present all evidence that it can possibly present--was answered by the prosecution in its closing statement:
 
 
 12
 Now, [defense counsel] wants to tell you that we ought to put on some type of handwriting expert. That cuts both ways. If a handwriting expert is going to say this is Bill Norris's, why didn't he put him on. Same thing, cuts both ways. If in fact a handwriting expert can do that.
 
 
 13
 While the prosecutor's statement was hardly appropriate, it was offered in response to defendant's making an incorrect comment of his own. Defendant's counsel properly objected at this point, in any event, and the judge correctly admonished the prosecutor.[5] The prosecutor immediately dropped this line of argument.
 
 
 14
 During his instructions to the jury, the court stated:
 
 
 15
 Ladies and gentlemen, in the final argument, [the prosecution] made a statement in response to [defense counsel's] comment about the fact that no evidence by an expert that this writing whereby the name of Bill Norris was signed to the document was supported by an expert's testimony that the document [signed as] Bill Norris was written by Jackie Norris. [The prosecution] made a statement that well, it cuts both ways, Mr. Norris could have had a handwriting expert. That's wrong. It doesn't cut both ways, because the government has the burden of proof. The government has the burden of proving Mr. Norris signed the document, proof beyond a reasonable doubt. Mr. Norris doesn't have to produce any evidence or call any witnesses, because all he is saying is, I'm not guilty, to the government, you've got to prove it.
 
 
 16
 So that was an erroneous statement [the prosecution] made, if he was intending to infer that Mr. Norris had any burden of proof at all, the burden of proof is on the government, the government has to prove everything. The defendant doesn't have to disprove it. You understand that? It's on the government.
 
 
 17
 Defendant claims that the prosecutor's error shifted the burden to defendant, and that the court's instruction failed to cure the error, and cites United States v. Smith, 500 F.2d 293 (6th Cir. 1974). This case indicates that in some situations prosecutorial misconduct may be so egregious that no instruction by the court is capable of righting the wrong. In Smith, using its supervisory power, a divided panel of this court reversed a conviction even though a curative instructive was given. In that case, however, the prosecutor had argued, without provocation from defense counsel, that the jurors require defendant to explain and prove that certain taped conversations were innocent in nature. The court, moreover, gave great weight to the failure of the court or counsel to object at the time of the statement and to the improper reference to defendant's failure to testify. In the instant case, however, as soon as the error was committed defense counsel objected and the prosecutor changed his line of argument. Furthermore, the comment was made in response to an improper statement of law by defense counsel. We find no serious egregious error under the circumstances.
 
 
 18
 A more recent case, United States v. Boyd, 620 F.2d 129 (6th Cir. 1980), states the Sixth Circuit test for determining whether prosecutorial error is reversible or merely harmless:
 
 
 19
 We consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidently placed before the jury and the strength of the competent proofs introduced to establish the guilt of the accused.
 
 
 20
 Id. at 131, quoting United States v. Leon, 534 F.2d 667, 679 (6th Cir. 1976); see also United States v. Young, 53 U.S.L.W. 4159 (1985) (prosecutor's comments in response to defense counsel's statements not plain error even though no objection made by defense counsel and no curative instructions given by court). Applying the Boyd test, we find the error to be harmless and in nature both isolated and accidental. There was strong competent proof of defendant's guilt, and the court forcefully instructed the jury to ignore the improper statement. We overrule this assignment of error.
 
 III. ADMISSION OF EVIDENCE
 
 21
 The trial judge permitted the government's chief witness to testify that Norris had purchased dynamite from Poore on twelve prior occasions. Defense counsel timely objected to this evidence claiming it violative of Rule 404(b).[6] During the bench conference at which the court discussed the admissibility of the evidence, the following colloquy occurred:
 
 
 22
 THE COURT: Is the defense going to be he didn't intend to do it, or that it wasn't him, or what is the defense going to be?
 
 
 23
 [DEFENSE COUNSEL]: Your Honor, we are not certain at this point.
 
 
 24
 THE COURT: On that basis, I'm going to overrule the objection.
 
 
 25
 [DEFENSE COUNSEL]: Your Honor, I will say if there is a defense, it will be that Mr. Norris was simply signing paper work for his brother.
 
 
 26
 THE COURT: Overruled.
 
 
 27
 Joint Appendix at 15.
 
 
 28
 We note at the outset that admissibility is a Rule 104(a) preliminary question for the court, as such it was proper for the judge to determine for what purposes the evidence would be used.[7] If the evidence was to show that Norris acted on May 13 in conformity with his earlier acts, then clearly the evidence would not be admissible. After defense counsel indicated that Norris would claim his motive and intent was merely to sign papers for his brother, however, the evidence became admissible for the proper purpose of showing Norris' true motive and intent. As the case developed, Norris further claimed that his brother and not he went to the explosives company on the date charged. The evidence, therefore, was admissible to show the indentity of the person who signed the forms on that day. The judge did not abuse his discretion in ruling on this Rule 104(a) preliminary question of admissibility.
 
 
 29
 United States v. Buck, 548 F.2d 871 (9th Cir.), cert. denied, 434 U.S. 980 (1977), presents a situation similar to the instant case. There, the prosecution was permitted to introduce evidence that defendant had purchased weapons on a prior occasion in defendant's trial for procuring ammunition with false identification. The court there held, as we do here, that the evidence was not used as evidence of prior misconduct, but rather to prove identity and intent.
 
 
 30
 We do not find that the trial court abused its discretion in admitting this evidence, and we find no prejudicial error in the court's not giving limiting instructions in the absence of a request by defendant's counsel.
 
 
 31
 Accordingly, for the above reasons, we AFFIRM Norris' conviction on both counts.
 
 
 
 *
 HONORABLE HORACE W. GILMORE, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Norris stipulated for purposes of the indictment and statute that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, and therefore was a convicted felon during the relevant time period
 
 
 [2]
 The company changed its name at some point from Cumberland Explosives to Kentucky-Tennessee Powder Company
 
 
 [3]
 Jackie Norris and Poore had been acquaintances for about 15 years, during which time Poore knew Norris as 'Jackie Norris.' Poore testified that although he had seen Jackie Norris' brother, Bill Norris, on a few social occasions he did not know his identity or name. When asked why he continued to sell explosives to Jackie Norris when he signed the form as Bill Norris, Poore answered 'I didn't know but what his name was William Jackson Norris. I knew nothing else.' Defendant's brother, however, testified that he had known Poore for nearly eight years
 
 
 [4]
 Defendant's father and brother were partners in 'John Norris and Son', a quarrying company. According to his brother's testimony, defendant worked for the company, but the government contested this employee relationship
 
 
 [5]
 At trial, defense counsel objected to the statement and asked for a mistrial. The judge overruled the request for new trial
 
 
 [6]
 Rule 404(b) of the Federal Rules of Evidence provides:
 Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
 
 
 [7]
 An a Rule 104(a) preliminary question, the standard on review is whether the judge abused his discretion in permitting the evidence to come in. See United States v. Cooper, 577 F.2d 1079, 1988 (6th Cir.), cert. denied, 439 U.S. 868 (1978); United States v. Mahar, 519 F.2d 1272, 1273 (6th Cir.), cert. denied, 423 U.S. 1020 (1975)