DIANE P. WOOD, Circuit Judge,
concurring in part and dissenting in part.
This was a complicated case, and the defendants individually and collectively have raised a number of points that require our serious consideration. I join my two colleagues in concluding that nothing here requires us to reverse the convictions returned by the jury. Insofar as results are concerned, my disagreement is confined to the disposition of the government’s cross-appeal. On that single part of the case, I have grave reservations about the proposition that the government has the right to invoke the plain error doctrine to avoid the consequences of its own oversights. Even if it does, I believe that the question of how the familiar rules about obviousness of the error and prejudice apply to the prosecutor is an exceedingly difficult one. It calls for an answer that is sensitive to the broader purposes of the harmless error rule. In the cases of Harold Jackson, Kevin Williams, Dion Lewis, and Jathel Garrett (the four “regents” to whom the majority refers), even if the district court made an obvious error in conferring “minor participant” status upon them under U.S.S.G. § 3B1.2,[1] that *923 error did not sufficiently affect the government’s “substantial rights,” as the term is used in both Fed. R. Cr. P. 52(b) and United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), to justify a reversal.
The majority suggests, ante at 922, that we always find “prejudice” where mistakes during criminal proceedings result in the misapplication of the Guidelines and a longer sentence for a defendant. I accept the proposition that extra time in prison qualifies as prejudice for Rule 52(b) purposes under this court’s law, and that it should have this consequence from the perspective of the defendant. But this does not answer the question whether the prosecutor’s failure to win a few extra months inflicts similar prejudice on the government. For one thing, a mechanical comparison between the two situations ignores the basic fact that Assistant U.S. Attorneys do not serve prison time as a result of error. More importantly, the application of the plain error rule should be related to the purpose behind this exception to our normal rules of forfeiture and waiver — an exception which is, as we have pointed out before, “inconsistent with the premises of an adversary system,” United States v. Caputo, 978 F.2d 972, 974 (7th Cir.1992). As Caputo put it, “What could justify the anomaly in the criminal sphere? It is the injustice of allowing the conviction of an innocent person, or an ■unlawful sentence imposed upon a guilty person, to stand.” Id. No such injustice occurs if the prosecutor obtains a sentence that is only a year or two less than the court would have imposed if the prosecutor had been on her toes. I therefore disagree with the majority’s conclusion that an erroneous downward departure is merely the reverse of what we see more typically — an erroneous decision that has the effect of increasing a sentence. It is the special deprivation of liberty resulting from a criminal sentence that justifies relieving a defendant of the consequences of a forfeited objection. Because no such deprivation occurs for the government, I reject the simple analogy the majority has drawn.
It is interesting to speculate about whether the government can ever establish prejudice for Rule 52(b) purposes, but I have no need at this juncture to rule out that possibility absolutely. There may be unusual circumstances in which an error that benefits a defendant may be so severe that it “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1, 15 (1985), quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). This court adopted that formulation in Durrive v. U.S., 4 F.3d 548, 551 (7th Cir.1993), to govern collateral attacks on sentences. It reflects the fact that collateral attack is normally reserved for only the gravest of mistakes — those of constitutional dimension or those that cast doubt on the integrity of the verdict, and thus implicate both the individual defendant and the public interest more broadly.
In all criminal cases, the public interest is what the government represents. As appellant, the government here is now seeking to be relieved of the consequences of its forfeiture of a point at sentencing. If this relief is available to it at all, it should be granted only where the error was plain and it had a serious effect on the fairness, integrity, or public reputation of judicial proceedings. One example of such an error might be the situation the Sixth Circuit considered in United States v. Barajas-Nunez, 91 F.3d 826 (6th Cir.1996). There, the court considered an erroneous downward departure that resulted in a sentence that was only eight months, instead of more than 57, as the correct Guidelines range prescribed. Id. at 833. The court concluded that such an extreme departure would “fly in the face of one of the primary purposes of the sentencing guidelines — the elimination of disparities in sentencing.” Id. In our case, the district court’s erroneous application of section 3B1.2 resulted in an offense level of 36 rather than 38, *924 only slightly shortening the defendants’ already decades-long sentences. There is no chance that this mistake, with its minimal sentencing consequences, will prompt the public to look askance upon the criminal justice system. Compare Durrive, where a similar discrepancy was deemed insufficient to meet the relevant standard for collateral attacks. I therefore respectfully dissent from the court’s disposition of the government’s cross-appeal.

. For the record, I am not at all convinced that the failure of the Assistant United States Attorney to object was such a clear mistake that the court had a duty to notice the problem on its own. For purposes of this dissent, however, I am not talcing issue with that part of the majority’s analysis.