

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-17-2004

# USA v. Johnson

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4199

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"USA v. Johnson" (2004). *2004 Decisions.* Paper 1003.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1003

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No.  02-4199

_____

UNITED STATES OF AMERICA

v.

ERIK JOHNSON
a/k/a TANK

Erik Johnson,

Appellant

(District Court No. 01-cr-00538-2)

_____

No. 02-4200

_____

UNITED STATES OF AMERICA

v.

RASHEED HARGROVE
a/k/a O.G.

Rasheed Hargrove,

Appellant

(District Court No. 01-cr-00538-1)

No. 02-4268

UNITED STATES OF AMERICA

v.

FUQUAN GLOVER
a/k/a FU

Fuquan Glover,

Appellant

(District Court No. 01-cr-00538-4)

On Appeal from the United States District Court
for the District of New Jersey
District Judge: The Honorable Alfred M. Wolin

Argued January 9, 2004

Before: BARRY and SMITH, *Circuit Judges*,
and POLLAK, *District Judge*[*]

(Filed: February 17, 2004)

*Attorney for Appellant Erik Johnson*
Michael N. Pedicini, Esq. [Argued]
Courthouse Plaza
60 Washington Street
Morristown, New Jersey 07960

---

[*]The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

*Attorney for Appellant Rasheed Hargrove*
Dennis M. Mautone, Esq. [Argued]
286 Union Avenue
Belleville, New Jersey 07109

*Attorney for Appellant Fuquan Glover*
Anthony N. Iannarelli, Esq.
141 Dayton Street, Suite 206
Ridgewood, New Jersey 07450

*Attorney for Appellee*
Ricardo Solano, Jr., Esq. [Argued]
Christopher J. Christie, Esq.
George S. Leone, Esq.
Office of United States Attorney
970 Broad Street, Room 700
Newark, New Jersey  07102

---

OPINION OF THE COURT

---

SMITH, *Circuit Judge.*

On August 22, 2001, a federal grand jury in Newark, New Jersey returned an indictment charging Rasheed Hargrove, Erik Johnson, and Fuquan Glover with conspiracy to distribute and to possess heroin and cocaine base, specifically "crack cocaine," in violation of 21 U.S.C. §§ 841 and 846.  The indictment also charged Hargrove, Johnson, and Glover with distribution and possession with the intent to distribute heroin in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.  On April 10, 2002, Glover pleaded guilty to Count One.  On May 2, 2002, a federal grand jury returned a superseding indictment against Hargrove and Johnson.  The pair were charged with

3

conspiracy to "distribute and possess with the intent to distribute controlled substances, namely more than one kilogram of heroin, . . . and more than five kilograms of cocaine base, specifically 'crack cocaine'" in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). The indictment also charged Hargrove with two counts, and Johnson with one count, of distribution and possession with the intent to distribute heroin in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.

Hargrove and Johnson were tried together before the District Court of New Jersey in a jury trial which lasted from June 18, 2002 to June 28, 2002. On June 28, 2002, the jury found appellants Rasheed Hargrove and Erik Johnson each guilty of one count of conspiracy to distribute and to possess with the intent to distribute heroin and cocaine base, specifically "crack cocaine." The jury also found Hargrove and Johnson guilty on all the counts of distribution and possession with the intent to distribute heroin. On appeal, Hargrove and Johnson seek a new trial claiming several trial errors. All three appellants challenge their sentences.

I.

Hargrove, Johnson, and Glover were leaders of a street gang known as the Crips. They called their local sect the Third World Crips or the Grape Street Crips. The Third World Crips operated out of the John W. Hyatt Court housing project in Newark, New Jersey ("Hyatt Court"). According to the testimony of Tyreece Irby, a fellow Third World Crip and drug dealer, the Third World Crips began selling drugs in Hyatt Court in the

4

early 1990s. Another long time resident and drug dealer in Hyatt Court, Latifa Shaheed, estimated that Hargrove had been selling crack cocaine and heroin in Hyatt Court for six or seven years and that Johnson had been similarly engaged for eight or nine years at the time of the June 2002 trial.

Irby testified that Hargrove was the leader of the Third World Crips, and that Glover was his second-in-command. Irby also identified Johnson as an influential leader. When Irby began selling drugs in 1998, at the age of 16, Hargrove was his supplier. On average, Irby testified he would sell seven to eight bricks of heroin, or about 140 to 160 grams, per day.[1] He also sold approximately 50 bags of cocaine containing .4 grams each, known as "dime bags," or 20 grams of cocaine a day. Irby was required to turn over approximately 70 percent of his proceeds to Hargrove. Hargrove also sold cocaine himself, supplied other heroin dealers, and had approximately ten to twelve other dealers selling cocaine for him. Although Johnson was not his supplier, Irby recalled that Johnson was a regular seller of cocaine as well.

Shaheed testified that Hargrove, Johnson, and Glover sold crack cocaine and heroin to her mother, aunt, and cousins on a daily basis. Shaheed's cousin also allowed Hargrove, Johnson, and Glover to store guns, heroin, and crack cocaine in her apartment. Shaheed acted as a seller for Hargrove, Johnson, and Glover. She estimated that she sold

---

[1] Irby testified that there are fifty "dime bags," each containing .4 grams of heroin, in a brick.

120 dime bags of cocaine per day. In the course of her drug sales, she had observed the drug traffic in Hyatt Court and estimated that approximately one thousand people in the Hyatt Court area would purchase drugs from Hargove, Johnson, and Glover. Approximately five hundred of those individuals were routine customers.

Paulette McQueen, a resident of Hyatt Court, testified that in 1999 the Third World Crips began to store drugs in her apartment. McQueen made a deal with Hargrove whereby she was given money and drugs in exchange for the use of her apartment to store guns and drugs, as well as four pitbulls which were later added for protection. McQueen testified that she observed both crack cocaine and heroin present in her apartment. Additionally, she saw crack cocaine being "cooked-up" on her stove, where cocaine and another substance were placed in a pot of water, boiled and then allowed to dry.

McQueen's arrangement with Hargrove was not without its difficulties. She testified that at one point while her apartment was being used, Hargrove accused her of stealing drugs from him. She described how Hargrove, Johnson, and Glover beat her and held her face against a hot radiator long enough to permanently remove the pigment from that portion of her face.

The Government also presented evidence that Hargrove sold to undercover police agents on three occasions. On August 31, 1998, Keith Franklin, employed by the Union County Prosecutor's Drug Enforcement Administration in Newark, testified that he went to Hyatt Court to purchase drugs while acting undercover. Franklin approached Hargrove

standing in a courtyard and asked if he could purchase a brick. Hargrove responded that he was sold out, and asked if Franklin would come back in a half an hour. Hargrove returned with 24 dime bags of heroin. Franklin testified that he purchased the dime bags for $160.

Detective Cassandra Jackson of the Newark Police Department testified that on January 3, 2001, she made an undercover drug purchase at a bodega near Hyatt Court. She testified that when Hargrove came to her car window, she requested cocaine, but was told that none was available. She then asked to purchase heroin. Hargrove sold her two dime bags for $20.

On April 3, 2001, Federal Bureau of Investigation special agent Shawn Manson and a cooperating witness went to Hyatt Court to attempt another drug buy. The cooperating witness wore a recording device and entered Hyatt Court where he purchased eight bags of cocaine. Special Agent Manson testified that she could not see the transaction but could hear it via the recording device's transmitter. Although Manson had not met Hargrove prior to that date, she recognized his voice from a previous occasion. No other evidence concerning the circumstances of that previous encounter was presented to the jury.[2]

---

[2] Johnson also sold drugs to an undercover agent. Kenneth McKindra, an agent for the Drug Enforcement Administration ("DEA"), testified that he acted as an undercover agent to purchase heroin from Johnson on December 11, 2000. McKindra, along with a cooperating witness, went to the Hyatt Court area on that date. Johnson approached the vehicle and asked if McKindra was wired. The cooperating witness exited the vehicle,

7

At the conclusion of the trial, the prosecutor included the following statement in his closing argument:

> Four buys by law enforcement from Rasheed Hargrove, four buys, big amounts of drugs, no user amounts, four buys. So, obviously in Hyatt Court from Irvington for reasons other than to play chess. Visit? Hang out? He's hanging out selling drugs. He's hanging out selling drugs and basically controlling the sale of drugs.

Later in his closing argument, the prosecutor stated that he himself is "not a Crip. I've never dealt drugs. [Hargrove] sold to undercovers four times. I've never sold drugs." After the second reference to four drug buys, Hargrove's counsel objected and stated that there was no evidence of four drug buys by Hargrove. The Court responded, in open court, that "the jury will have to determine and I'm sure when you have your opportunity to speak, you'll remind the jury of any error . . . ."

During Hargrove's counsel's closing, he sought to correct any misimpression created by the prosecutor's references to "four buys":

> Now, when the prosecutor, Mr. Repetto, was speaking to you just a few moments ago, he kept referring to four buys. He said it a couple of times. He referred to Mr. Hargrove. That's not here. That's not true. There's only charges, even charges for three. That tells you–what does that tell you? Two times he made that mistake. It's in his head. He's making this thing as big as he can. They're blowing it up . . . .

On rebuttal, the prosecutor again discussed a fourth transaction:

---

and purchased heroin in a transaction which took place approximately six to ten feet away.

8

Ladies and gentlemen, in my summation I outlined a mammoth amount of evidence that proved this particular conspiracy, and in the summation of [Hargrove's counsel], I'm accused of somehow making this bigger by including a transaction that was not part of the case.

We offered evidence on August 31st, '98 [sic], that Rasheed Hargrove did a drug transaction. We offered evidence on January 3rd, 2000, that Rasheed Hargrove did a drug transaction. We offered evidence on April 3rd, 2000, that Rasheed Hargrove did a drug transaction.

In cross examination Shawn Mason, the FBI agent, was asked how it is that you know Rasheed Hargrove's voice. She testified because we did a drug transaction the day before with him. Are they named in the indictment? No, they're not named in the indictment. Two are. They're for minor amounts of drugs. But the evidence on those transactions is overwhelming. And it's part of the overwhelming evidence on the conspiracy itself.

No contemporaneous objection was made by defense counsel. The next day, prior to the District Judge charging the jury, Hargrove's counsel requested a curative instruction.[3] However, explaining that he did not recall the facts and that a transcript of the earlier testimony of Special Agent Manson was not available, the District Judge declined to include a curative instruction in his charge to the jury. Instead, he simply recited the following standard language:

statements and arguments of counsel are not evidence in the case, but are only for the purposes of persuading you as to counsel's respective points of view. Unless you are otherwise instructed, the evidence in the case consists of the sworn

---

[3]Defense counsel had been instructed by Hargrove not to request a mistrial.

9

testimony of the witnesses and all exhibits received in evidence regardless of who may have produced them, and all facts which may have been admitted by the parties.

Regardless of what counsel or the Court has said in recalling the facts of the case, I want to stress in the strongest possible terms that it is your recollection of the facts which in the final analysis should guide you . . . .

The jury returned a verdict of guilty on all counts.

On November 1, 2002 the District Court sentenced both Hargrove and Johnson to life imprisonment on count one. Hargrove also received a concurrent sentence of 240 months on each of the two counts of distribution and possession with the intent to distribute. Johnson was given a concurrent sentence of 240 months on his single count of distribution and possession with the intent to distribute. On November 6, 2002 Glover was sentenced to 108 months. These timely appeals followed.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We begin with Hargrove's contention that a new trial is warranted because of prosecutorial misconduct during the Government's closing arguments and the lack of a curative instruction by the District Court.[4] We review the District Court's treatment of the

---

[4]Both Hargrove and Johnson argue that prosecutorial misconduct also occurred when the Government failed to turn over evidence in a timely fashion. Hargrove asserts that the prosecutor's failure to disclose all inculpatory evidence during plea negotiations was improper and misleading. Because Hargrove does not identify any evidence which was

10

defense objections to the prosecutor's statements for abuse of discretion. *See United States v. Brennan*, 326 F.3d 176, 182 (3d Cir.), *cert. denied*, 124 S.Ct. 248 (2003) (citing *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001)).

When examining a prosecutor's statements, we must review them in the context of the trial as a whole, "in other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 11-12 (1985). Additionally, we must look to the effect of any curative instructions given and the strength of the evidence against the defendant. *United States v. Gambone*, 314 F.3d 163, 179 (3d Cir.) *cert. denied* 124 S.Ct. 67 (2003) (citing *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999)).

Here, viewed in light of the trial as a whole, we find that there was no unfair prejudice. We condone neither the prosecutor's original statement that Hargrove was involved in four drug buys, nor his return to the subject after the defense objection. Indeed, the latter statement exacerbated the earlier misstatement by giving an additional incorrect recitation of Special Agent Manson's testimony. Yet, we do not believe that the prosecutor's statements, although improper, were prejudicial in the context of the trial as

---

not turned over, nor any legal basis upon which we should find that a failure to do so constitutes prosecutorial misconduct, his argument is without merit. Similarly, we reject Johnson's argument that the prosecutor's failure to disclose a video tape prior to trial was misconduct. Johnson was given an opportunity to view the tape prior to its introduction, and his counsel could not identify any prejudice resulting from its late disclosure when we inquired about it at oral argument.

11

a whole. While the drug transactions were central to the prosecutor's case, the specific number of those transactions was not. Indeed, the indictment included charges against Hargrove for only two of the three transactions about which testimony was presented. Nor do we see any basis to conclude that the prosecutor's misstatements were deliberate. If anything, his rebuttal argument suggests that he honestly misrecollected the testimony of Special Agent Manson.

Next, we turn to the District Court's refusal to give a curative instruction. Rather than give such an instruction, the District Court simply told the jury, during his charge, that they should rely on their own recollections of the facts rather than those of the trial counsel. The lack of a curative instruction notwithstanding, the weight of the evidence against Hargrove was so great that we do not find that the prosecutor's statements were prejudicial.

Hargrove would have us examine this question in the narrow light of the number of drug buys about which testimony was actually introduced at trial. He argues that in a case where the prosecution introduced evidence of only three drug buys, the reference to a fourth is highly prejudicial, as opposed to a case where there was evidence of fifty drug buys and the prosecutor made reference to an additional transaction. Even if that is so, however, we must examine the weight of all the evidence against Hargrove, not simply the testimony regarding the individual drug sales.

The prosecution presented testimony of witnesses who were intimately involved in

12

the conspiracy to possess and distribute heroin and cocaine. These witnesses detailed the means and practices Hargrove employed in his heroin and cocaine enterprise. Shaheed explained that Hargrove and Johnson had approximately five hundred routine customers. Irby testified that they had been selling in Hyatt Court since the early 1990s, and Shaheed estimated that Hargrove had been selling for six or seven years. Not only was Irby selling drugs for Hargrove, he explained that there were at least a dozen others doing the same. From the testimony at trial, it is clear that defendants had at least two stash houses for drugs and guns. The prosecutor's statements must be viewed in light of this weighty evidence as well as the evidence of the three drug buys. Taken in context, the prosecutor's statements–although worthy of reproach–do not warrant a new trial.

III.

Hargrove and Johnson also bring challenges to their sentencing under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). They argue that the trial judge was required to instruct the jury that the identity and quantities of the drugs must be found beyond a reasonable doubt because findings on these two issues can increase the statutorily prescribed maximum sentence. However, neither Hargrove nor Johnson challenges the jury's findings that they conspired to distribute and possessed with the intent to distribute one or more kilograms of heroin. This finding by the jury alone is sufficient to support their life

13

sentences. We reject, therefore, Hargrove and Johnson's *Apprendi* challenge.[5]

Additionally, Glover contends that his sentence for 108 months on one count of conspiring to distribute and possess with the intent to distribute heroin, cocaine, and cocaine base in violation of 21 U.S.C. § 846 was improper. Glover argues that there is insufficient evidence to increase his guideline range by two levels for the use of firearms and an additional two levels for utilizing a minor in connection with his violation of § 846. Upon reviewing the record, we conclude that there was sufficient evidence to warrant imposition of these two enhancements.[6]

We therefore affirm the District Court's judgment and sentence for Hargrove, Johnson, and Glover.

---

[5] Similarly, we reject Johnson's argument that the District Court erred in its instruction to the jury, in response to its question "if [a juror doesn't] agree with the rest of the jurors on any counts, 'what will be the next step.'" We find that the District Court's response to the jury, that they were to resolve the case "without doing violence" to their own individual judgments, was proper and does not constitute an abuse of discretion.

[6] Additionally, we find no error in the District Court's addition of one point to Glover's criminal history due to a previous guilty plea to possession of marijuana.

14

*United States of America v. Johnson, et al.*, Nos. 02-4199, 02-4200, 02-4268

POLLAK, *District Judge, concurring and dissenting*:

I agree that the sentence of Fuquan Glover, and the conviction and sentence of Erik Johnson, should be affirmed. However, I respectfully dissent from the court's conclusion that the conviction and sentence of Rasheed Hargrove should be affirmed. I am of the view that Hargrove should be tried again. My reasons follow:

As the court's opinion explains, government counsel, in his closing argument, stated: "Four buys by law enforcement from Rasheed Hargrove, four buys, big amounts of drugs, no user amounts, four buys." And, warming to his subject, government counsel later added: "I've never dealt drugs. [Hargrove] sold to undercovers four times. I've never sold drugs."

In fact the government had only presented evidence of three Hargrove sales to "undercovers." When, after the second reference to four transactions, Hargrove's counsel objected, the trial judge, in the presence of the jury, replied that "the jury will have to determine and I'm sure when you have your opportunity to speak, you'll remind the jury of any error. . . ."

Government counsel, in his rebuttal closing argument, did not recognize and acknowledge the error. Instead, he offered further detail of the non-existent evidence. As the court succinctly puts it, "the latter statement exacerbated the earlier misstatement. . . ."

15

The following day, just before the trial judge was to charge the jury, Hargrove's counsel requested a curative instruction. The trial judge, uncertain whether the testimony invoked by government counsel supported government counsel's argument, and having no transcript of the pertinent testimony, ruled as follows:

> You know, I know that Mr. Hargrove has not had an opportunity to see the charge, but he was here in court when I said to the jury at the commencement of the case in my preliminary instructions that whatever lawyers say is comment and not evidence, and that you listen to the testimony of the people on the witness stand who took an oath, and in my final charge, I repeat that instruction, so I think I'm going to decline to give any special instruction and I'll rely upon the instructions in my charge which are comprehensive and that reinforce that principle that any comment by counsel is nothing but comment and is not evidence.

The trial judge's proposed instruction, which he then incorporated in his charge, was the standard instruction quoted in this court's opinion. It stated, *inter alia*, that, "[r]egardless of what counsel or the Court has said in recalling the facts of the case, I want to stress in the strongest possible terms that it is your recollection of the facts which in the final analysis should guide you in carrying out your function as judges of the facts."

This standard instruction is unexceptionable. And, given that the trial judge had at hand no transcript he could consult, it may be understandable that he did not give the more focused curative instruction – an instruction directed to the particular disputed testimony – that Hargrove's counsel presumably had in mind.

But we on this court, having the transcript, now know what the trial judge did not

16

know: government counsel was in error – gravely in error – in stating, and then reiterating, that the testimony established four undercover buys from Hargrove.

In view of the great weight of the evidence against Hargrove, my colleagues conclude that, "[t]aken in context, the prosecutor's statements – although worthy of reproach – do not warrant a new trial." If this were a routine drug case (and it is a profoundly problematic aspect of the work judges are engaged in day by day that the jurisprudence of drugs can generally be characterized as "routine"), I might not dissent. But this is not a routine drug case. Hargrove has been sentenced to life imprisonment. Before such a sentence is ratified by an appellate court, we should, I submit, make certain that there are no egregious and markedly prejudicial prosecutorial blunders of the sort which are of record in this case. Ordering that a new trial be had – a trial in which Hargrove would receive the process that is due, and nothing less – would seem a very modest price to pay for assurance that the work of the federal courts has been properly performed. Indeed, it is not a price at all. It is an opportunity – an opportunity to be cherished – for lawyers representing the government, and for lawyers representing defendants, and for judges, to do our jobs in ways that continue to merit the confidence of our fellow citizens.