

Opinions of the United
States Court of Appeals
for the Third Circuit

2009 Decisions

6-15-2009

# In Re: Bayside

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3913

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"In Re: Bayside " (2009). *2009 Decisions.* Paper 1187.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3913
_____

IN RE:  BAYSIDE PRISON LITIGATION

LUIS MEJIAS
v.
THEODORE ROTH;
SCOTT FAUNCE;
GARY HILTON;
JOHN COUGHLIN;
WILLIAM FAUVER

Scott Faunce,
Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C.  Civil No. 97-cv-05127)
District Judge:  Honorable Robert B. Kugler

_____

Argued May 20, 2009

Before:  RENDELL and GARTH, <u>Circuit</u> <u>Judges</u>,
and VANASKIE, <u>District</u> <u>Judge</u>*

(Filed: June 15, 2009)

_____

*Honorable Thomas I. Vanaskie, Judge of the United States District Court for the Middle District of Pennsylvania, sitting by designation.

Mark M. Roselli, Esq.    **[ARGUED]**
Roselli, Griegel, Lozier & Lazzaro
1337 State Highway 33
Hamilton Square, NJ  08690
  *Counsel for Appellant*

Paul J. Hirsh, Esq.
Suite 300
10 Madison Avenue
Morristown, NJ  07960

Lawrence W. Lindsay, Esq.
Justin T. Loughry, Esq.    **[ARGUED]**
Loughry & Lindsay
330 Market Street
Camden, NJ  08102
  *Counsel for Appellee*

---

## OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

This appeal comes to us from a jury verdict in favor of plaintiff inmate Luis Mejias and against the prison administrator Scott Faunce, awarding Mejias compensatory damages of $45,000 and punitive damages in the amount of $200,000, arising out of events following a lockdown in the prison after the death of one of the guards.  We must decide, first, whether Faunce is entitled to a new trial because plaintiff's counsel engaged in prejudicial misconduct during his summation and because the verdict was not supported by sufficient evidence, and second, whether the District Court correctly concluded that the amount of punitive damages awarded was appropriate under the case

2

law. We conclude that the claimed misconduct was harmless, and that adequate evidence supported the verdict. However, we find that the District Court failed to give sufficient consideration to the remittitur motion of defendant as to the punitive damages award, requiring us to remand the case.

Because we write solely for the benefit of the parties, we confine our discussion to the facts salient to this appeal. Mejias's claims arose during a lockdown of Bayside State Prison ("Bayside"), ordered after an inmate murdered a guard. Mejias alleges that he was severely beaten by Special Operations Group ("SOG") personnel deployed to secure the facility during the lockdown. Mejias subsequently filed suit under 42 U.S.C. § 1983, claiming that Faunce, Bayside's administrator, was deliberately indifferent to a substantial risk of serious harm to him, when Faunce failed to respond to numerous allegations of inmate abuse. The jury awarded Mejias $45,000 in compensatory damages and $200,000 in punitive damages. Faunce requested a new trial on alternative grounds – that the verdict was unsupported by insufficient evidence and was tainted by attorney misconduct. Faunce also moved to vacate or reduce the punitive damages award. Judge Kugler denied the motion in its entirety, and Faunce appealed.[1]

We first consider whether prejudicial misconduct occurred. At the conclusion of plaintiff's closing arguments, defense counsel, Mark Roselli, registered several

---

[1] The District Court exercised jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 1291.

3

objections: that plaintiff's counsel, Jaime Kaigh, (1) improperly attacked his credibility, (2) referred to SOG personnel as "thugs," (3) speculated as to why Mejias fell asleep at trial, (4) asserted that Faunce knew about inmate abuse, and (5) misstated the applicable law. Roselli renews these objections, and raises several other improprieties, on appeal.

Where a motion for a new trial is based on attorney misconduct, we review a district court's disposition for abuse of discretion, reversing only if "no reasonable person would adopt the district court's view," and if it is "reasonably probable" that the verdict was influenced by the improprieties committed, viewed as a whole. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000); *Greenleaf v. Garlock, Inc.*, 174 F.3d 352 (3d Cir. 1999); *Draper v. Airco Inc.*, 580 F.2d 91, 94, 97 (3d Cir. 1978). Moreover, where objections are raised for the first time on appeal, we review for "plain error," and only "particularly egregious" errors that would result in a "miscarriage of justice" will warrant a new trial. *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 & n.14 (1982)).

First, Roselli argues that Kaigh improperly attacked his credibility, by accusing him of "spinning" evidence, "selling" the jury on facts, and suggesting that Roselli had a "bridge he'd like to sell you [the jury] in Brooklyn." A. 757-58a, 760a. We reject Faunce's analogy of these statements to the "vituperative and insulting" references in *Draper*, which we found tainted the verdict. 580 F.2d at 95. First, whereas the attorney in *Draper* charged defense counsel with ethical and criminal violations, Kaigh merely

4

accused Roselli of zealous advocacy – a rather benign suggestion. *Id*. at 97 n.9. Second, in *Draper*, the attorney invoked class issues, disparaging defense counsel's extraordinary wealth; here, by contrast, Kaigh avoided charged social issues. *Id*. at 97. Third, in *Draper*, the attorney, referencing defense counsel's personal wealth, violation of discovery rules, and criminal conduct, invited the jury to consider extra-record information. *Id*. Kaigh, however, confined his comments to facts in evidence. Finally, whereas the curative instructions in *Draper,* delivered the day after the misconduct occurred, were too little, too late, *id*., Judge Kugler promptly directed the jury to disregard Kaigh's statements. Hence, we conclude that *Draper* does not compel a new trial here.[2]

We summarily dispose of Roselli's second objection – that Kaigh's reference to SOG personnel as "thugs," utterance of the words "crap" and "damn," and brief comparison of Faunce to a fictional film character were prejudicial. Where punitive damages are at issue, counsel has significant rhetorical leeway. *Dunn*, 1 F.3d at 1377; *cf. Gonzalez v. Carey*, 58 Fed. Appx. 269, 270 (9th Cir. 2003) (finding characterization of criminal defendant as "thug" to be within the permissible range of argument). Even assuming, *arguendo*, that Kaigh's comments were improper, they were isolated, were not directed at Faunce, and were followed by a prompt curative instruction. There was no

---

[2] We also reject Roselli's related argument – that Kaigh improperly suggested that Faunce was "in denial," "hoodwinked" the jury, and suffered a "convenient memory lapse." A. 756a, 762a, 765a. These remarks, raised for the first time on appeal, were less egregious than the accusation of "corporate lies" that we found harmless in *Dunn v. Hovic*, where a timely objection was registered. 1 F.3d 1371, 1377 & n.3 (3d Cir. 1993).

error here.

Roselli's next objection – that Kaigh's suggestion that Mejias took medication was prejudicial – is also unavailing. In his summation, Kaigh suggested that medication might have caused Mejias to fall asleep during trial. Because Faunce fails to explain how Mejias's use of an unidentified medication was prejudicial, no reversible error occurred.

Roselli's fourth objection is that there was no basis for Kaigh's assertion that Faunce received memos documenting inmate abuse. Citing Faunce's contrary trial testimony, Roselli maintains that Kaigh's assertion was unsupported. Because prison investigators testified that they sent memos documenting inmate abuse to Faunce, we conclude that Kaigh's assertion rested on an adequate evidentiary foundation and was thus permissible. A. 664a, 667a, 669-670a.[3]

Roselli's fifth objection is that Kaigh misstated the law by asserting that Faunce's failure to maintain a log book and to require SOG personnel to wear identifying

---

[3] We also reject two related objections, urged for the first time on appeal. First, Roselli contends that there was no basis for Kaigh's assertion that Faunce was "getting allegations of inmate abuse from "day one or day two" of the lockdown. A. 761a. To the contrary, Faunce conceded precisely this fact on direct examination. A. 687a. Second, Faunce argues that Kaigh misrepresented the contents of a memo transmitted by Lisa Little, a prison official, to Faunce. In his summation, Kaigh noted that the memo contains allegations of Eighth Amendment violations related to the lockdown. Faunce maintains that the memo dealt, instead, with the prison's failure to provide inmates their required medications. Even assuming, *arguendo*, that Kaigh's assertion was unfounded, no "miscarriage of justice" resulted, since it was unlikely that the jury relied on Kaigh's characterization of the memo, which was not introduced into evidence and which received only brief mention in Kaigh's summation.

information established an Eighth Amendment violation. Roselli misconstrues Kaigh's argument: Kaigh identified the absence of a log book and identifying information as probative, but not conclusive, of deliberate indifference. A. 687a. In any event, Judge Kugler issued prompt curative instructions, informed the jury of the proper legal standard, and repeatedly admonished the jury that counsels' arguments were not authoritative statements of the law. A. 745-46a, 748a, 764a. On these facts, we conclude that Kaigh's alleged misstatements were harmless.

Finally, Faunce contends that he was prejudiced when Mejias blurted, "[T]hey beat our ass" during Roselli's summation.[4] Faunce did not request curative instructions.[5] We conclude, as the District Court did, that Mejias's outburst was as likely to harm as to aid him, and that, in any event, jurors heeded Judge Kugler's instruction to confine their deliberations to the evidence presented at trial. A. 745a, 764a.

In addition to these issues, Faunce identifies for the first time on appeal several other improprieties, which we review for plain error. Faunce argues that Kaigh improperly vouched for prison investigators, whom he variously described as "people of honor that . . . told the truth," who were "honest," and who "kn[e]w what happened." A.

---

[4] In a sworn declaration, Roselli attests, but the record does not reflect, that Mejias also called Roselli a "liar" immediately thereafter. A. 9a.

[5] Although Judge Kugler admonished Mejias not to interrupt counsel, it is unclear whether Judge Kugler acted *sua sponte* or pursuant to timely objection by defense counsel. A. 756a. In either event, we conclude that the remark was not sufficiently prejudicial to warrant a new trial.

7

762. We have generally prohibited counsel from "vouching" for witnesses – a tactic that can "convey the impression that evidence not presented to the jury but known" to counsel supports a witness's credibility. *See U. S. ex rel. Haynes v. McKendrick*, 350 F.Supp. 990, 996-97 (S.D.N.Y. 1972); *see also Lawn v. United States*, 355 U.S. 339, 359 n.15 (1958). Here, however, Kaigh did not assert personal knowledge of investigators' integrity, but rather relied on evidence in the record, including investigators' substantial experience, professional duty to be impartial, and the absence of an ulterior motive to report abuse. A. 758, 762. This was not improper.

Next, Faunce contends that Kaigh misstated the "deliberate indifference" standard by suggesting that supervisory liability would attach if Faunce "should have known" about allegations of inmate abuse. A. 760a. However, Kaigh properly articulated the essential elements of the deliberate indifference standard set forth in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (quoted in *Kaucher v. County of Bucks*, 455 F.3d 418, 427 (3d Cir. 2006)). There, the Court stated that supervisory liability may be imposed when an "official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Kaigh appropriately emphasized the requirement of actual knowledge, arguing that Faunce was,

in fact, aware of allegations of inmate abuse.[6]  In any event, Faunce concedes that Judge

Kugler properly instructed jurors that proof of actual knowledge of inmate abuse was

necessary to impose liability, that they were required to follow the law as provided by

him, and that counsels' arguments were just that – argument. A. 745-46a, 748a, 764a.

Hence, no miscarriage of justice resulted.[7]

Faunce's final argument is that Kaigh urged the jury to consider the "lack of

proofs" – that is, to draw adverse inferences from his failure to adduce evidence in

Kaigh's possession and probative on the particular issue. A. 760.  However, we have

made clear that, "[w]here relevant information . . . is in the possession of one party and

not provided, then an adverse inference may be drawn that such information would be

harmful to the party who fails to provide it." *Riley v. Taylor*, 277 F.3d 261, 283 (3d Cir.

2001) (quoting *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000)); *see*

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939) ("The production of

weak evidence when strong is available can lead only to the conclusion that the strong

---

[6] Kaigh stated, "Scott Faunce was deliberately indifferent to this and every other inmate who risked injury in that time frame.  He was indifferent because of the Wayne Zraski memo because he got a memo that said an inmate alleged (sic) SOG hit me and beat me for no reason.  He was on notice from that moment. Wayne Z. Memo. And he was on notice because of the conversation with Lebak." A. 760a.

[7] Faunce also argues that Kaigh violated the so-called "Golden Rule" by urging the jury to put itself in Faunce's shoes in assessing liability. *Edwards v. City of Phila.*, however, forecloses Faunce's argument. 860 F.2d 568, 574 (3d Cir. 1988) ("[A] clear and complete jury instruction on the elements of the claim asserted and on the allocation of the burdens of proof, whenever given, is sufficient to cure harm caused by a 'Golden Rule' argument.").

would have been adverse.").

Hence, we conclude that Kaigh's conduct during summation was not sufficiently prejudicial to warrant a new trial.

Alternatively, Faunce seeks a new trial because the "the minimum quantum of evidence" necessary to sustain the verdict was not presented. *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004). Faunce singles out two facts as unsupported by the record – that Mejias was actually beaten, and that defendant was aware, but chose to disregard, a substantial risk of serious injury to plaintiff. We review a district court's decision whether to grant a new trial on the basis that the verdict is against the weight of the evidence for abuse of discretion, drawing all reasonable inferences from the evidence presented in favor of the non-moving party. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1072 (3d Cir. 2006); *Greenleaf*, 174 F.3d at 365-66; *see Roebuck v. Drexel Univ.*, 852 F.2d 715, 735 (3d Cir. 1988). "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

As to Faunce's first contention, ample evidence, including Mejias's testimony, the testimony of Ombudswoman Jessie Rojas, and contemporaneous photographs, substantiated plaintiff's claimed injuries. A. 660-63a, 704a, 705a. Faunce's second

10

argument is also unavailing. Ombudswomen Lebak and Rojas testified that they communicated to Faunce, verbally and in writing, that they received numerous allegations of inmate abuse. A. 645-47a, 659-67a, 669-70a. In fact, Faunce acknowledged that he received one to two allegations of inmate abuse daily since the lockdown's inception. A. 687a. Nonetheless, Faunce admits that he did not personally review videotapes of inmate movement, and could not recall ever discussing with ombudsmen, or receiving memos, regarding inmate abuse. A. 683-86a. Accordingly, a jury could rationally conclude that Faunce was deliberately indifferent to a substantial risk of serious harm to plaintiff.

Faunce's final contention is that the punitive damages award was excessive.[8] The jury awarded Mejias $45,000 in compensatory damages[9] and $200,000 in punitive damages. Because the constitutional magnitude of a punitive damages award implicates due process concerns, we review *de novo* a district court's decision sustaining the amount

_____

[8] Faunce also maintains that punitive damages were improper because he did not act with a "reckless disregard" of Mejias's constitutional rights. Appellant's Br. at 46-47. As discussed, sufficient evidence supported the jury's determination that Faunce acted with deliberate indifference. Accordingly, the imposition of punitive damages was not improper. *See Farmer*, 511 U.S. at 836 ("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.").

[9] Faunce also contends that insufficient evidence supported the jury's compensatory damages verdict. We will grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. *Williamson*, 926 F.2d at 1353. Here, adequate evidence supported the award: prison investigators testified to Mejias's extensive bruising, his distress during and following the assault, and his fear of further reprisals if he filed a complaint. On the record before us, we have no basis on which to disturb the jury verdict.

11

of a jury's punitive damages award. *See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436 (2001); *Willow Inn, Inc. v. Public Service Mutual Ins. Co.,* 399 F.3d 224, 230 (3d Cir. 2005). We must "determine whether the punitive damage award is so 'grossly disproportional' to the defendant's conduct as to amount to a constitutional violation." *Id.* Although Judge Kugler acknowledged that "the punitive damages award against Faunce is more difficult to justify because he didn't personally assault anyone," he upheld the punitive damages award, noting that "[c]learly he [Faunce] did nothing to end the beatings," that the jury was properly instructed on the law, and that the sum awarded did not "violate[] the precepts set forth in recent Supreme Court cases." A. 7a.

Here, the sum awarded - $200,000 - was roughly 4.5 times the compensatory award. In *BMW of North America, Inc. v. Gore*, the Court indicated that the punitive damages award must bear a "reasonable relationship" to the "harm that actually has occurred" and to the harm "likely to result in the future." 517 U.S. 559, 581 (1996). Although the Supreme Court has not adopted, or, for that matter, prohibited a particular mathematical ratio of punitive to compensatory damages, *Willow Inn*, 399 F. 3d at 233, it has indicated that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23-24 (1991)); *see Gore*, 517 U.S. at 581 (citing long legislative history of

12

double, treble, and quadruple damages to deter and punish wrongdoing). *Cf. Exxon Shipping Co. v. Baker*, ___ U.S.___, 128 S. Ct. 2605, 2634 (2008) (holding that maximum ratio of punitive to compensatory damages permitted under maritime common law is 1:1). As we explained in *Willow Inn*, "the ratio of punitive damages to the harm caused by the defendant is a tool to insure that the two bear a reasonable relationship to each other." 399 F.3d at 233-34. Where compensatory relief is substantial, a large ratio of punitive to compensatory damages is especially likely to be excessive. *See, e.g.*, *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594 (8th Cir. 2005); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 796-99 (8th Cir. 2004); *Thomas v. iStar Fin., Inc.*, 508 F.Supp.2d 252, 263 (S.D.N.Y. 2007). Accordingly, in such a case, several courts have found a ratio between 1:1 and 2:1 to comport with constitutional restrictions.[10]

_____

[10] *See, e.g.*, *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 487 (6th Cir. 2007) ("[A] ratio in the range of 1:1 or 2:1 is all that due process will allow" where the compensatory damages award was already substantial-$366,939-and only one of the reprehensibility factors was present); *Williams*, 378 F.3d at 796-99 (reducing punitive damages award from an approximately 10:1 ratio to a 1:1 ratio because plaintiff received substantial compensatory damages-$600,000); *Thomas*, 508 F.Supp.2d at 263 ("[T]he Court believes the [3:1 to 4:1] ratio in this case is excessive because Thomas was awarded a very substantial amount in compensatory damages [$443,500], making a punitive award equal to the compensatory damage award more appropriate."); *Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F.Supp.2d 555, 565 (S.D.N.Y. 2008) (reducing a punitive damages award, where the ratio was 2:1, because compensatory damages were substantial-$1.65 million).

13

Although we do not establish a maximum ratio of punitive to compensatory damages, we believe these precedents provide helpful guidance to district courts.[11]

Here, the jury awarded Mejias $45,000 in compensatory damages – substantial relief given the extent of plaintiff's injuries. While punitive damages of greater than four times this significant compensatory award might be justified, the district court did not seem to consider this a close case. We, however, believe that it is, and that the motion to reduce the award deserves close scrutiny in light of the Supreme Court's jurisprudence. We are cognizant of facts supporting a punitive damages verdict here: that Mejias suffered physical rather than solely economic harm; that Faunce, as Bayside's administrator, occupied a unique position of authority and responsibility; and that punitive damages might be necessary to deter administrative complacency and ensure inmate safety. Thus, we do not second guess the District Court's determination in this regard. However, given the foregoing precedents, we believe that the precise amount of damages merits a hard look.[12] Accordingly, we will AFFIRM the jury's verdict but will VACATE

---

[11] Judge Garth would hold that the maximum constitutional limit for punitive damages is a ratio of 1:1. He relies among other opinions on Justice Souter's recent opinion in *Exxon Shipping v. Baker*, ___ U.S. ___, 128 S. Ct. 2605 (2008), which establishes a 1:1 ratio, albeit in a maritime context.

[12] The District Court's review of punitive damages must ensure that the amount awarded "not be disproportionately excessive to the degree of reprehensibility of the defendant's conduct and the harm that conduct visited upon the plaintiff, and the award must not exceed the state legislature's judgment of the appropriate sanctions for the conduct." *Willow Inn,* 399 F.3d at 230. In carrying out this directive, the Court could consider, for instance, other such awards in the Bayside Prison cases (although, admittedly, each case must be judged on its own facts, and on the evidence presented) as

14

the punitive damages award and REMAND the case to the District Court for further

consideration of the amount of the punitive damages award, consistent with these principles.

---

well as the legislature's judgment as to appropriate punishment for similar conduct--if any is comparable--in the way of criminal fines. *See Gore*, 517 U.S. at 583-84.  In any event, some consideration and discussion as to the propriety of the amount is in order, given the relatively large award in this case.