[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14381
_____

D.C. Docket No. 1:13-cr-20293-UU-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID EDMOND,
a.k.a. Zodey,
a.k.a. Zoedy,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 16, 2015)

Before TJOFLAT, JILL PRYOR and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

David Edmond was indicted for conspiracy to commit access-device fraud and aggravated identity theft based upon his use of social security numbers to make fraudulent bank transfers. Pursuant to a plea agreement, he pleaded guilty to possession of fifteen or more unauthorized access devices—an unindicted offense—and one count of aggravated identity theft. On the basis of this plea, the District Court sentenced Edmond to prison for a total of forty-eight months.

Edmond now appeals his sentence. First, he argues that the District Court lacked jurisdiction because Count One of the indictment failed to state an offense. Second, he argues that the District Court erroneously calculated his number of victims resulting in an unduly large sentence. We reach neither argument. Instead, we notice plain error and reverse his conviction for possession of fifteen or more access devices. And, because this reversal eliminates the factual support for an element of his aggravated identity-theft conviction, we also reverse that conviction for lack of sufficient evidence.

## I.

### A.

From sometime in January to the beginning of April 2013, Edmond and his co-conspirator, Sheenequa Angel Michel, allegedly engaged in a scheme to

2

fraudulently transfer money using unauthorized "replacement cards."[1]  Michel, a Bank of America ("BofA") teller, would improperly access, photograph,[2] and create lists of "the personal identification information, including Social Security numbers," of BofA customers.  Edmond would then use that information to acquire unauthorized replacement cards, and, in turn, would use those cards to make fraudulent money transfers.

By April 1, 2013, Michel had transferred two lists, each containing the information of ninety BofA customers, to Edmond.  Edmond attempted to change the address of approximately sixty.[3]  He was successful in obtaining thirty replacement cards, and of those, he used six to make fraudulent transactions.  This resulted in a total loss of $14,243.31.

On April 1, 2013, Michel created a third list of personal identification information for ninety BofA customers.  However, before she could transfer the list to Edmond, BofA representatives—presumably after investigating identity-theft complaints—confronted her.  Michel admitted her involvement in the conspiracy to the representatives, and, after waiving her *Miranda* rights, she

---

[1] The factual proffer presented to the District Court does not specify whether these were credit or debit cards (or something else entirely); it merely labels them "replacement cards."

[2] Michel used her cell phone to photograph her work computer's screen.

[3] The factual proffer does not link this fact to the subsequent issuance of the thirty replacement cards.  We infer that attempting to change the address of approximately sixty customers was a necessary step to obtaining unauthorized replacement cards in the names of those customers.

admitted the same to law enforcement officers. She agreed to cooperate with their investigation into Edmond's activities and provided the officers with the 180 sets of personal identification information she had already transferred to Edmond.

Michel subsequently transferred another list of ninety names to Edmond on April 11, 2013. Unbeknownst to Edmond, this list consisted of controlled identities provided by law enforcement. Following the transfer, agents arrested Edmond. Like Michel, he waived his *Miranda* rights. He then voluntarily admitted that Michel had, without authorization, previously supplied him with BofA customers' personal identification information, including social security numbers. In the course of their investigation, law enforcement learned about Edmond's successes and failures in obtaining and using replacement cards to fraudulently transfer money. Law enforcement also obtained surveillance photographs of Edmond using four of the unauthorized replacement cards to make fraudulent transactions.

### B.

On April 30, 2012, a Southern District of Florida grand jury returned a seven-count indictment against Edmond and Michel. Count One alleged that Edmond and Michel committed fraud in connection with access devices, stating that the two

> did knowingly and willfully combine, conspire, confederate, and
> agree with each other and with other persons known and unknown to

4

the Grand Jury, to knowingly, and with the intent to defraud, possess, use and traffic in fifteen (15) or more counterfeit and unauthorized access devices, that is, Social Security numbers, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(3). . . .  All in violation of Title 18, United States Code, Section 1029(b)(2).

Counts Two through Seven alleged aggravated identity theft, 18 U.S.C. § 1028A(a)(1)–(2)[4], predicated upon the conspiracy to commit access-device fraud alleged in Count One.  Edmond was arraigned on May 2, 2013, and pleaded not guilty to all counts.

On July 29, 2013, Edmond entered into a plea agreement with the government in which he would plead guilty to Counts One and Three in exchange for the dismissal of the remaining five counts.  The plea agreement, however, incorrectly described Count One as "possession of fifteen (15) or more unauthorized access devices in violation of Title 18, United States Code, Section 1029(a)(3)."  Furthermore, the plea agreement stated that Count One carried a maximum statutory penalty of ten years' imprisonment.  Although a § 1029(a)(3) violation does carry a ten-year penalty, 18 U.S.C. § 1029(c)(1)(A)(i), the penalty for conspiracy to commit access device fraud—the actual crime with which the grand jury charged Edmond—carries a penalty of five years, 18 U.S.C. § 1029(b)(2).

---

[4]  We pause to note that 18 U.S.C. § 1028A(a)(2) is a terrorism offense.  How these facts implicate terrorism we do not know.

Along with this plea agreement, Edmond signed a factual proffer admitting the facts recounted above.  That proffer concludes with the statement that Edmond "conspired to knowingly and with the intent to defraud, possess fifteen (15) or more unauthorized access devices" and "did knowingly transfer, possess, and use, without lawful authority, the means of identification of one hundred and eighty (180) other persons."  These statements tracked the statutory language of Counts One and Three as charged in the indictment.  Neither the prosecution nor the defense, however, noted the glaring inconsistency between the offenses described in the proffer and those described in the plea agreement.

Unfortunately, the District Court did not notice the problem either.  During Edmond's plea colloquy, the court first confirmed that Edmond had a full opportunity to review both the indictment and plea agreement with his attorney.  After accepting Edmond's answer that he understood the contents of both documents—an answer which demonstrated that he understood neither, given that the documents referred to different crimes—the court explained that "[u]nder the plea agreement, you've agreed to plead guilty to Count 1 of the indictment, which charges you with possession of 15 or more unauthorized access devices, in violation of Title 18, United States Code, Section 1029(a)(3)."  The court also explained that Count One carried a maximum penalty of ten years.

6

The District Court then set out to confirm that Edmond had actually committed the crimes to which he was to plead guilty. It accomplished this feat by confirming that Edmond had reviewed the factual proffer with his attorney and that he understood and agreed to its contents. Unfortunately, the District Court did not refer to any facts that might have made manifest the offense to which Edmond was pleading. Following this exchange, the court accepted his guilty plea as to Counts One and Three, [5] with the obvious understanding that Count One involved possession rather than conspiracy.

Following the sentencing hearing and a review of the presentence investigation report ("PSI"), [6] the District Court sentenced Edmond to twenty-four months' imprisonment for Count One and twenty-four months' imprisonment, to be served consecutively, for Count Three. The judgment of conviction reflected that Edmond had been adjudicated guilty under 18 U.S.C. § 1029(a)(3). It

---

[5] The plea was mundane and opaque:

THE COURT: And now, how do you plead to the charges in Counts 1 and 3: Guilty or not guilty?

EDMOND:    Guilty.

[6] The PSI contained hints that something was amiss. While the PSI repeatedly referred to Count One as "[c]onspiracy to possess 15 or more unauthorized access devices," it also repeatedly cited 18 U.S.C. § 1029(a)(3), the possession statute, as the basis for that count. It also stated that Count One carried penalties consistent with a possession charge, but inconsistent with a conspiracy charge. No one picked up on these hints. Regardless, by the time the PSI entered the picture, the damage had been done; Edmond had already pleaded guilty to an unindicted crime.

7

described that offense as "[c]onspiracy to possess 15 or more unauthorized access devices."

## II.

In his appeal, Edmond argues for the first time that Count One of the indictment was insufficient to state an offense—and therefore that the District Court lacked jurisdiction over that count—because social security numbers, the "access device" required for the conspiracy count, are not access devices as defined in 18 U.S.C. § 1029(e)(1).  Furthermore, because the aggravated identity-theft conviction cannot stand absent a conviction under Count One, he argues that we must reverse his conviction on Count Three as well.  *See* 18 U.S.C. § 1028A(a)(1).[7]  Finally, he also argues for the first time that the District Court erred in calculating the number of victims for purposes of determining his sentence enhancement under United States Sentencing Guidelines § 2B1.1(b)(2).

After hearing oral argument on these issues, we discovered that both the plea agreement and plea colloquy assume that Count One of the indictment charged Edmond with possession of fifteen or more unauthorized access devices under 18

---

[7] 18 U.S.C. § 1028A(a)(1) punishes "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  Conspiracy to possess unauthorized access devices under 18 U.S.C. § 1029(b)(2) and possession of unauthorized access devices under 18 U.S.C. § 1029(a)(3) are both enumerated offenses.  *See* 18 U.S.C. § 1028A(c)(4).

U.S.C. § 1029(a)(3).[8]  As belabored above, the indictment actually charged Edmond with conspiring to possess access devices under 18 U.S.C. § 1029(b)(2).[9] We requested that the parties submit supplemental briefs regarding whether we should notice this error and, if so, whether the error merits reversal of Edmond's convictions.  After receiving the benefit of that briefing, we conclude that the District Court committed plain error and that Edmond's convictions must be reversed.

III.

As stated, neither party briefed, let alone noticed, the issue that Edmond pleaded guilty to a crime for which he was not indicted.  We nonetheless may review a District Court's acceptance of a defendant's guilty plea *sua sponte* for plain error.  *See Meadows ex rel. Meadows v. Cagle's, Inc.*, 954 F.2d 686, 693–94 (11th Cir. 1992).  To find plain error, there must be: (1) error, (2) that is plain, and (3) that has affected the defendant's substantial rights.  *United States v. Olano*, 507 U.S. 725, 735–36, 113 S. Ct. 1770,  1778–79, 123 L. Ed. 2d 508 (1993).  An error affects a defendant's substantial rights when it is "prejudicial: It must have affected the outcome of the district court proceedings."  *Id.* at 734, 113 S. Ct. at 1777–78.

---

[8] 18 U.S.C. § 1029(a)(3) punishes "[w]hoever . . . knowingly and with intent to defraud possesses fifteen or more devices which are counterfeit or unauthorized access devices."

[9] 18 U.S.C. §1029(b)(2) punishes "[w]hoever is a party to conspiracy of two or more persons to commit an offense under subsection (a) of this section, if any of the parties engages in any conduct in furtherance of such offense."

9

Even if all three prongs are met, we can only reverse if the error is so grave that allowing it to stand would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732, 113 S. Ct. at 1776 (alteration omitted) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 1046, 84 L. Ed. 2d (1985)) (quotation marks omitted).

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. "Simply put, a defendant can be convicted only of a crime charged in the indictment." *United States v. Madden*, 733 F.3d 1314, 1318 (11th Cir. 2013). In this case, the District Court violated Edmond's constitutional rights by accepting a guilty plea for a crime not charged in the indictment.[10] This was plain error. Because Edmond was convicted of a crime not

---

[10] The Government asserts that Edmond pleaded guilty to Count One of the indictment—that is, the conspiracy charge—and that the real question here is "whether the district court plainly erred in failing to properly advise Edmond of the nature of the charged offense to which he pleaded guilty." In essence, the Government asserts that this case involves a harmless Rule 11 violation in which all parties actually understood the proceedings and charges despite some technical violation or omission in the colloquy.

It is clear to us, however, that everyone understood "Count One" to refer to a possession charge. The plea agreement talked about a possession charge, listed the possession statute, and cited the statutory penalty for possession. The District Court did the same, and the judgment of conviction lists 18 U.S.C. § 1029(a)(3) as Count One (although it does, erroneously, state that this provision regards a conspiracy). Furthermore, the District Court never discussed any facts that might have made clear that Edmond was pleading guilty to a conspiracy. The record before us is simply barren of any suggestion that Edmond was pleading guilty to anything but a possession charge. We are unwilling to accept that when Edmond pleaded guilty to "Count One," he was actually pleading guilty to a conspiracy charge to which the attorneys and District Court were oblivious.

charged in the indictment, *see id.* at 1323, and is now serving a sentence for that conviction, the error clearly affected the outcome of his proceedings. The prejudice is manifest. Finally, as we stated in *Madden*, it is "self-evident" that a defendant's conviction for a crime not charged in an indictment seriously affects the fairness, integrity, and public reputation of judicial proceedings. *Id.* at 1323; *see also United States v. Floresca*, 38 F.3d 706, 714 (4th Cir. 1994) (en banc) ("[C]onvicting a defendant for an unindicted crime affects the fairness, integrity, and public reputation of federal judicial proceedings in a manner most serious.").

Accordingly, we find that accepting Edmond's guilty plea was plain error. We therefore reverse Edmond's conviction as to the unindicted 18 U.S.C. § 1029(a)(3) offense. Furthermore, because his conviction under Count Three[11] relied upon the 18 U.S.C. § 1029(a)(3) conviction, we reverse Count Three for lack of sufficient evidence.

REVERSED.

---

[11] Thankfully, the "Count Three" that Edmond pleaded to and the Count Three in the indictment are one and the same.